UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **KEVIN CARTER,**<br><br>*Plaintiff*,<br><br>v.<br><br>**TRANS UNION, LLC,** *and*<br>**EQUIFAX INFORMATION SERVICES, LLC,**<br><br>*Defendants*. | Case Number: 8:23-cv-00751<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **Kevin Carter** ("**Mr. Carter**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, **Equifax Information Services, LLC** ("**Equifax**") and **Trans Union LLC** ("**Trans Union**") (jointly with Equifax, "**Defendants**"), stating as follows:

### PRELIMINARY STATEMENT

1. This is an action brought by Mr. Carter against the Defendants for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("**FCRA**").

### JURISDICTION AND VENUE

2. Subject matter jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

Page **1** of 18

3. The Defendants are subject to the jurisdiction of this Court pursuant to Fla. Stat. § 48.193 and Fed. R. Civ. P. 4(k).

4. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391(b)(2) because the acts complained of were committed and / or caused by the Defendants within Manatee County, Florida, which is in the Middle District of Florida.

## PARTIES

5. **Mr. Carter** is a natural person who at all times relevant has resided in the city of Bradenton, Manatee County, Florida.

6. Mr. Carter is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

7. **Equifax** is a Georgia limited liability company with a primary business address of 1550 Peachtree Street NW, Atlanta, GA 30309.

8. Equifax is registered to conduct business in the State of Florida, where its Registered Agent is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

9. **Trans Union** is a Delaware limited liability company with a primary business address of 1550 Peachtree Street NW, Atlanta, GA 30309.

10. Trans Union is registered to conduct business in the State of Florida, where its Registered Agent is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

11. Equifax and Trans Union are both a "consumer reporting agency" ("CRA") within the meaning of 15 U.S.C. § 1681a(f), in that, for monetary fees, dues, and/or on a cooperative nonprofit basis, they regularly engage, in whole or in part, in the practice of assembling or evaluating consumer credit information, or other information on consumers, for the purpose of furnishing consumer reports to third parties, and use means or facilities of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically the mail and internet.

## FACTUAL ALLEGATIONS

### Mr. Carter's Income Share Agreement

12. On or about July 31, 2020, Mr. Carter entered into an *Income Share Agreement* with Kenzie Academy, Inc. ("**Kenzie**"), a provider of online education programs.

13. Income share agreements, or "ISAs," are a non-traditional means of financing whereby a lender provides an up-front payment to the borrower in exchange for a percentage of the borrower's future income.

14. The providers of ISAs, including Kenzie, often go to great lengths to stress that ISAs are not loans, as their ISAs result in a repayment which includes interest at a rate that vastly exceeds the maximum interest rate permitted by most states, including Florida.

15. Indeed, Kenzie's ISA to Mr. Carter states prominently at the top, "THIS IS NOT A LOAN OR CREDIT." **SEE PLAINTIFF'S EXHIBIT A.**

16. Rather than a traditional lender/borrower relationship, Mr. Carter's ISA refers to Kenzie as the "Funder" and Mr. Carter as a "Participant." *Id.*

17. Kenzie initially advanced $23,900 to Mr. Carter to finance his educational program.

18. This amount was referred to as the "Funding Amount," rather than the traditional loan verbiage, "principal."

19. Mr. Carter's ISA requires that he make 48 monthly payments of 13% of his income, calculated initially based on a paystub provided by Mr. Carter, and thereafter adjusted based on Mr. Carter's tax returns.

20. While the ISA has an early termination clause, should Mr. Carter pay a total equal to $41,825, the ISA does not have a balance which Mr. Carter made payments towards.

21. Instead, the ISA terminates after the "Payment Term" – the period of 48 months during which Mr. Carter pays 13% of his estimated income.

22. The Payment Term begins following the "In-Program Term" – the period of time when the borrower/participant is completing his educational program – and a brief "Grace Period."

### Launch Reports Mr. Carter's ISA to the CRAs

23. On or about September 9, 2020, Mr. Carter received a letter from Launch Servicing, LLC ("**Launch**"), indicating therein that Launch would be servicing his ISA on behalf of Kenzie.

24. Launch thereafter reported Mr. Carter's ISA to both Defendants, plus Experian - the "Big Three" CRAs.

25. Launch reported the ISA to the Big Three *despite the fact* that the ISA prominently states that it is not a loan, and not credit.

26. Launch reported that the ISA had an "Original Balance" of $41,825. **SEE PLAINTIFF'S EXHIBIT B**.

27. As explained above, the ISA, per its clear terms, does not have a "balance" which Mr. Carter would be required to pay.

28. Launch's reported "Original Balance" is thus false.

29. Kenzie, by reporting its ISAs to the CRAs through its servicer, Launch, seeks to "have its cake and eat it too," as Kenzie claims its ISAs are not credit in order to avoid state usury statutes, as well as other consumer protection statutes, such as the Truth in Lending Act, but then reports its ISAs *as loans with balances* to the CRAs, thereby affecting the borrowers' debt-to-credit ratios in an attempt to force payments.

30. The Defendants accepted Launch's reporting of the ISA and, on information and belief, incorporated the tradeline data from Launch into consumer reports sold regarding Mr. Carter.

31. Indeed, on or about March 7, 2022, Mr. Carter began the application process for obtaining a mortgage through CrossCountry Mortgage, LLC ("CrossCountry Mortgage").

32. CrossCountry Mortgage, to review Mr. Carter's application, requested and obtained a consumer report regarding Mr. Carter from Factual Data – a "reseller" of consumer reports.

33. Factual Data, in response to CrossCountry Mortgage's request for a consumer report regarding Mr. Carter, requested and obtained consumer reports from each of Experian, Trans Union, and Equifax, and then merged the information obtained from each into one composite report, which it then provided to CrossCountry Mortgage.

34. On information and belief, both Defendants included the Launch Servicing tradeline in their reports to Factual Data, for use by CrossCountry Mortgage.

35. Defendants' reporting of the Launch Servicing tradeline negatively affected Mr. Carter's debt-to-credit ratios.

36. As a result of the Defendants' reporting of the Launch Servicing tradeline, Mr. Carter could not proceed with his application for a home loan.

### Mr. Carter's Disputes of the Launch Servicing Tradeline

37. On or about March 7, 2023, Mr. Carter mailed a letter to Trans Union, therein disputing its reporting of the Launch Servicing tradeline.

38. Likewise, on or about March 7, 2023, Mr. Carter mailed a letter to Equifax, therein disputing its reporting of the Launch Servicing tradeline.

39. On information and belief, both Equifax and Trans Union, upon receipt of Mr. Carter's disputes, sent Launch an *Automated Consumer Dispute Verification Request* ("**ACDV**") through a system known as e-OSCAR.

40. Launch responded to the ACDVs, updating its tradeline with each Defendant and deleting neither. **SEE PLAINTIFF'S EXHIBITS C & D**.

41. Launch's update significantly *increased* the harm to Mr. Carter's credit, as Launch updated its reporting of the ISA to an "Open" status with a balance of over $40,000 owed by Mr. Carter. *Id.*

42. Equifax and Trans Union, as CRAs, are required to conduct their own investigations into a dispute from a consumer. *See* 15 U.S.C. § 1681i(a)(1)(A).

43. However, on information and belief, rather than conduct their own independent investigations, Equifax and Trans Union relied on the ACDV

responses from Launch, blindly accepting the ACDV results and updating their report accordingly.

44. Had Equifax and Trans Union conducted their own investigations, they would have, or should have, determined that the subject account was an income share agreement, which, pursuant to its own clear and unambiguous terms, cannot have a reported balance.

45. At a minimum, Equifax and Trans Union should have updated the Launch tradeline to reflect that Mr. Carter disputed the account.

46. Equifax and Trans Union's investigations into Mr. Carter's dispute was thus unreasonable.

47. Equifax and Trans Union continue to include the Launch tradeline in reports sold regarding Mr. Carter, effectively preventing Mr. Carter from applying for new credit.

**Defendants' Systems Do Not Provide Accurate Means to Report Any ISA**

48. An ISA, such as Mr. Carter's, *conditions* payments on Mr. Carter's continued employment and earning of a salary above $40,000 per year.

49. Thus, Mr. Carter's payments pursuant to the ISA were *conditional*.

50. The Defendants' systems for reporting credit information do not provide any means by which a furnisher can indicate that payments are conditional.

51. The Defendants know that their systems do not permit a furnisher to indicate conditional payment.

52. The Defendants, as CRAs, have a legal duty to use reasonable procedures to assure the maximum possible accuracy of its consumer reports. *See* 15 U.S.C. § 1681e(b).

53. Accepting data from an ISA provider, or servicer, without providing means to properly report the information is inherently an *unreasonable* procedure.

54. Knowing that they lack the means to allow furnishers to report payments as conditional, the Defendants could choose not to report ISAs from furnishers such as Launch, but instead the Defendants choose to maximize profits, generating income from accepting and including data from ISA providers and servicers.

55. In the present matter, Mr. Carter specifically informed the Defendants, via his dispute letter, that they were reporting information concerning an ISA.

56. Despite this, the Defendants continued to include the Launch tradeline in their disclosures and reports regarding Mr. Carter, without indicating the conditional nature of payments under the tradeline.

57. Records from Trans Union suggest that Trans Union has sold as many as 18 consumer reports to Mr. Carter's creditors and potential creditors since October 2021.

58. On information and belief, each of these reports contained the Launch tradeline, falsely reporting with a balance and without indicating conditional payment.

59. Records from Equifax suggest that Equifax has sold two consumer reports to Mr. Carter's creditors and potential creditors since October 2021.

60. On information and belief, both of these reports contained the Launch tradeline falsely reporting with a balance and without indicating conditional payment.

61. Mr. Carter has hired the undersigned law firm to represent him in this matter and has assigned the firm his right to fees and costs.

## COUNT I
## EQUIFAX'S VIOLATIONS OF THE FCRA
## 15 U.S.C § 1681e(b)

62. Mr. Carter adopts and incorporates paragraphs 1 - 61 as if fully stated herein.

63. Equifax violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of consumer reports sold regarding Mr. Carter when Equifax sold consumer reports regarding Mr.

Carter which contained the Launch tradeline, falsely reporting with a balance owed and without indicating that payment of the ISA was conditional.

64. Equifax's conduct was willful and intentional, or, alternately, was done with reckless disregard for its duties under the FCRA to provide reports with maximum possible accuracy, and its policies could reasonably be foreseen to cause harm to Mr. Carter.

65. Accordingly, Equifax is liable, pursuant to 15 U.S.C. § 1681n, for the greater of Mr. Carter's actual damages and statutory damages of $1,000 per violation, plus punitive damages, reasonable attorney's fees, and costs.

66. Alternatively, Equifax's conduct was the result of negligence, and Equifax is liable, pursuant to 15 U.S.C. § 1681o, for Mr. Carter's actual damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Mr. Carter respectfully requests this Honorable Court enter judgment against Equifax for:

    a.    The greater of Mr. Carter's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A), or in the alternative, Mr. Carter's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

    b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

    c.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3) or 15 U.S.C. § 1681o(a)(2); and,

    d.    Such other relief that this Court deems just and proper.

## COUNT II
## EQUIFAX'S VIOLATIONS OF THE FCRA
## 15 U.S.C. § 1681i(a)(1)(A)

67. Mr. Carter adopts and incorporates paragraphs 1 - 61 as if fully stated herein.

68. Equifax violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable investigation into a dispute by Mr. Carter in February 2023. Had Equifax conducted a reasonable investigation, it would have deleted the Launch tradeline, as neither properly reflected that payment of an ISA is conditional.

69. At an absolute minimum, Equifax should have updated the tradeline to reflect Mr. Carter's dispute.

70. Equifax's conduct was willful and intentional, or, alternately, was done with reckless disregard for its duties under the FCRA to investigate consumer disputes, and its policies could reasonably be foreseen to cause harm to Mr. Carter.

71. Accordingly, Equifax is liable, pursuant to 15 U.S.C. § 1681n, for the greater of Mr. Carter's actual damages and statutory damages of $1,000 per violation, plus punitive damages, reasonable attorney's fees, and costs.

72. Alternatively, Equifax's conduct was the result of negligence, and Equifax is liable, pursuant to 15 U.S.C. § 1681o, for Mr. Carter's actual damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Mr. Carter respectfully requests this Honorable Court enter judgment against Equifax for:

a. The greater of Mr. Carter's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A), or in the alternative, Mr. Carter's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3) or 15 U.S.C. § 1681o(a)(2); and,

d. Such other relief that this Court deems just and proper.

### COUNT III
### TRANS UNION'S VIOLATIONS OF THE FCRA
### 15 U.S.C § 1681e(b)

73. Mr. Carter adopts and incorporates paragraphs 1 - 61 as if fully stated herein.

74. Trans Union violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of consumer reports sold regarding Mr. Carter when Trans Union sold consumer reports regarding Mr.

Carter which contained the Launch tradeline, falsely reporting with a balance owed and without indicating that payment of the ISA was conditional.

75. Trans Union's conduct was willful and intentional, or, alternately, was done with reckless disregard for its duties under the FCRA to provide reports with maximum possible accuracy, and its policies could reasonably be foreseen to cause harm to Mr. Carter.

76. Accordingly, Trans Union is liable, pursuant to 15 U.S.C. § 1681n, for the greater of Mr. Carter's actual damages and statutory damages of $1,000 per violation, plus punitive damages, reasonable attorney's fees, and costs.

77. Alternatively, Trans Union's conduct was the result of negligence, and Trans Union is liable, pursuant to 15 U.S.C. § 1681o, for Mr. Carter's actual damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Mr. Carter respectfully requests this Honorable Court enter judgment against Trans Union for:

   a. The greater of Mr. Carter's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A), or in the alternative, Mr. Carter's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

   b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

 c. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3) or 15 U.S.C. § 1681o(a)(2); and,

 d. Such other relief that this Court deems just and proper.

## COUNT IV
## TRANS UNION'S VIOLATIONS OF THE FCRA
## 15 U.S.C. § 1681i(a)(1)(A)

78. Mr. Carter adopts and incorporates paragraphs 1 - 61 as if fully stated herein.

79. Trans Union violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable investigation into a dispute by Mr. Carter in February 2023. Had Trans Union conducted a reasonable investigation, it would have deleted the Launch tradeline, as neither properly reflected that payment of an ISA is conditional.

80. At an absolute minimum, Trans Union should have updated the tradeline to reflect Mr. Carter's dispute.

81. Trans Union's conduct was willful and intentional, or, alternately, was done with reckless disregard for its duties under the FCRA to investigate consumer disputes, and its policies could reasonably be foreseen to cause harm to Mr. Carter.

82. Accordingly, Trans Union is liable, pursuant to 15 U.S.C. § 1681n, for the greater of Mr. Carter's actual damages and statutory damages of $1,000 per violation, plus punitive damages, reasonable attorney's fees, and costs.

83. Alternatively, Trans Union's conduct was the result of negligence, and Trans Union is liable, pursuant to 15 U.S.C. § 1681o, for Mr. Carter's actual damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Mr. Carter respectfully requests this Honorable Court enter judgment against Trans Union for:

a. The greater of Mr. Carter's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A), or in the alternative, Mr. Carter's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3) or 15 U.S.C. § 1681o(a)(2); and,

d. Such other relief that this Court deems just and proper.

## **JURY TRIAL DEMANDED**

Mr. Carter hereby demands a trial by jury on all issues so triable.

Respectfully submitted on **April 5, 2023**, by:

**SERAPH LEGAL, P. A.**

*/s/ Bryan J. Geiger*
Bryan J. Geiger, Esq.
Florida Bar No.: 119168
BGeiger@seraphlegal.com
1614 North 19th Street
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
*Attorneys for Plaintiff*

## **EXHIBIT LIST**

| | |
|---|---|
| A | Mr. Carter's ISA Agreement |
| B | Mr. Carter's Trans Union Consumer Disclosure, February 7, 2023, Excerpt |
| C | Plaintiff's Trans Union Dispute Results, Excerpt |
| D | Plaintiff's Equifax Dispute Results, Excerpt |